IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH W. LEISER,

                Plaintiff,

v.

SHANNON MOORE and
RANDY ROGERS,

                Defendants.

Case No. 16-4110-DDC-KGS

**MEMORANDUM AND ORDER**

Plaintiff Joseph W. Leiser filed this action pro se[1] in the District Court of Coffey County, Kansas. Defendants Shannon Moore and Randy Rogers removed the case to federal court. Doc. 1. This matter comes before the court on defendants' Motion for Judgment on the Pleadings. Doc. 21. For reasons explained below, the court concludes that plaintiff's federal claims fail to state a claim for relief. The court thus dismisses plaintiff's federal claims under Fed. R. Civ. P. 12(c). The court declines to exercise supplemental jurisdiction over plaintiff's state law claims. So, the court remands the case to the District Court of Coffey County, Kansas.

**I.      Defendants' Motion to Strike and Plaintiff's "Motion for Judicial Pardon"**

Before turning to defendants' Motion for Judgment on the Pleadings, the court first addresses two other pending motions—one filed by plaintiff and the other filed by defendants. Defendants have filed a Motion to Strike Plaintiff's Response to Defendants' Motion for Judgement on the Pleadings. Doc. 25. Defendants assert that the court should strike plaintiff's

---

[1]    Because plaintiff brings this lawsuit pro se, the court construes his pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

response because it is untimely, redundant, and immaterial. Doc. 25 at 2. Indeed, plaintiff's response was untimely—he served it three days past the deadline for responding.

Defendants filed their Motion for Judgment on the Pleadings on March 17, 2017. Doc. 21. Under our court's local rules, plaintiff had 21 days to file a response to that Motion. *See* D. Kan. Rule 6.1(d)(2) ("Responses to . . . motions for judgment on the pleadings must be filed and served within 21 days."). So, plaintiff's response was due by April 11, 2017. Plaintiff's response time was extended by three additional days under Fed. R. Civ. P. 6(d), because defendants served their motion by mail. *See* Doc. 21 at 2 (stating in the certificate of service that defendants served plaintiff by "first-class mail, postage prepaid" to plaintiff's address at the Winfield Correctional Facility). So, with these three additional days, plaintiff's response was due on April 14. But, plaintiff did not serve his response until April 17. *See* Doc. 23 at 5 (certificate of service).

In response to defendants' Motion to Strike, plaintiff has filed a "Motion for Judicial Pardon for Late Filing." Doc. 26. This motion explains why plaintiff was unable to file his response in a timely fashion. It also asks the court "to excuse the late filing due to circumstances out of his control." *Id.* at 1. The court thus construes plaintiff's "Motion for Judicial Pardon for Late Filing" as a motion for leave to file his response out of time.

Plaintiff asserts that on March 24, 2017, prison officials transferred him without notice to the El Dorado Correctional Facility ("EDCF"). Plaintiff states that he initially was placed in maximum custody with no library time. But, on April 5, 2017, plaintiff was moved to "low medium custody." Doc. 26 at 1. Plaintiff says he received defendants' Motion for Judgment on the Pleadings on April 1, 2017, but that he was unable to use the library from April 3 to April 13, after a facility-wide lockdown following a violent stabbing in the prison. Plaintiff asserts that he

was unable to write his response until April 14, 2017. He also asserts that April 17, 2017, was the first time that he was able to "e-file" his response with the court. *Id.*

Our local rules provide that a party "who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum" "[a]bsent a showing of excusable neglect[.]" D. Kan. Rule 7.4(b). Excusable neglect "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 392 (1993) (citations and internal quotation marks omitted). But, a party's "inadvertence, ignorance of the rules, or mistakes concerning the rules do not usually constitute 'excusable' neglect." *Id.* The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The factors to consider when making this determination include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

After considering the relevant factors, the court exercises its discretion to grant plaintiff leave to file his response out of time. The length of delay here is slight. Plaintiff filed his response three days past the deadline. His late filing has had little to no effect on the judicial proceedings because this action is in its early stages. Circumstances outside plaintiff's control appear to have caused the delay—he was transferred to a new prison facility without notice, and he was unable to access the prison library to prepare his response until the day before the response was due. Plaintiff seems to have acted in good faith, and nothing suggests that allowing plaintiff to file a late response would prejudice defendants. These factors favor a finding of

excusable neglect, so the court grants plaintiff's request to file his response out of time. The court also denies defendants' Motion to Strike Plaintiff's Response on the basis that it is untimely.

Defendants also assert that the court should strike plaintiff's response because it contains redundant, immaterial, impertinent, or scandalous matter. Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But, courts disfavor striking pleadings and "any doubt as to the utility of the material to be stricken should be resolved against the motion to strike." *Landrith v. Gariglietti*, No. 11-2465-KHV, 2012 WL 171339, at *1 (D. Kan. Jan. 19, 2012), *aff'd*, 505 F. App'x 701 (10th Cir. 2012) (citations omitted).

Defendants argue that plaintiff's response "contains no factual assertions or relevant case law controverting any of defendants' contentions or arguments." Doc. 25 at 3. Although plaintiff fails to address all of defendants' arguments in their Motion for Judgment on the Pleadings, plaintiff responds to others, asserting that he has stated a claim for relief under federal and state law. The court resolves any doubts about the utility of plaintiff's response against the motion to strike and concludes that plaintiff's failure to address all the issues raised in defendants' motion does not render his pleading "redundant, immaterial, impertinent, or scandalous." The court also recognizes that plaintiff has filed his response pro se. So, the court must construe his pleadings liberally. *Hall*, 935 F.2d at 1110. For these reasons, the court denies defendants' Motion to Strike.

## II.  Motion for Judgment on the Pleadings

The court now turns to defendants' Motion for Judgment on the Pleadings.

### A. Factual Background

Plaintiff's Petition alleges the following facts. The court accepts them as true and views them in the light most favorable to plaintiff. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

On May 26, 2014, plaintiff was incarcerated in the Jefferson County Detention Center in Mt. Vernon, Illinois. Plaintiff was awaiting extradition to Coffey County, Kansas. Before extradition, Shannon Moore, a Jail Administrator employed by Coffey County, asked the Jefferson County Detention Center to conduct medical tests on plaintiff. Ms. Moore commissioned two medical examinations—a chest x-ray and CT scan—to determine if plaintiff sustained injury when United States Marshals tasered him for "an extreme length of time." Doc. 1-1 at 2. The tests showed plaintiff had bone lesions and possibly cancer.

Ms. Moore and Randy Rogers, the Coffey County Sheriff, disclosed the results of the tests to the Coffey County Hospital and to plaintiff's friends and family. Plaintiff never consented to disclosure of his medical records. Plaintiff's Petition asserts several claims based on defendants' disclosure of his medical information, including violations of his constitutional rights and the Health Insurance Portability and Accountability Act ("HIPAA").

### B. Legal Standard

A party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c) after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). Courts evaluate a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

The court will grant a motion for judgment on the pleadings only when the factual allegations in the Complaint fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the factual allegations in the complaint are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. Instead, a plaintiff must plead "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This requires a plaintiff to plead factual allegations that "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The court also construes the pro se plaintiff's pleadings liberally but does not assume the role as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff's pro se status also does not excuse him from "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Nor is plaintiff relieved from complying with the rules of the court, if he fails to comply with them, or facing the consequences of noncompliance.

*Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

### C. Analysis

Defendants' Motion for Judgment on the Pleadings asks the court to dismiss plaintiff's Petition because each of plaintiff's claims fails as a matter of law. Plaintiff's Petition asserts three causes of action: (1) Count I, violation of plaintiff's Fourth Amendment rights; (2) Count II, breach of federal and state HIPPA laws; and (3) Count III, violation of federal and state privacy acts and tort laws. Doc. 1-1 at 3–4. The court addresses each of plaintiff's claims in turn, below.

#### 1. Violation of Fourth Amendment (Count I)

Defendants assert that plaintiff's Fourth Amendment claim fails as a matter of law because defendants are not liable under 42 U.S.C. § 1983. Specifically, defendants contend that they had a duty to determine whether plaintiff required medical care and that plaintiff had no expectation of privacy in the exchange of his medical records between jail personnel.

Private citizens can assert a civil action for deprivation of rights "secured by the Constitution and laws" of the United States under 42 U.S.C. § 1983. To assert a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution . . . and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Here, plaintiff asserts that defendants, acting under color of state law, illegally searched and seized his medical records in violation of the Fourth Amendment.

The Supreme Court has held that the Fourth Amendment prohibition against unreasonable searches and seizures does not apply to prisoners in certain circumstances. *See*

*Hudson v. Palmer*, 468 U.S. 517, 529–30 (1984) (finding prisoners do not have a Fourth Amendment right to privacy in their cells); *see also Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (concluding prisoners retain a limited right to bodily privacy under the Fourth Amendment). Although the Fourth Amendment provides inmates only limited privacy protections, the Tenth Circuit has recognized that there is a "constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health." *Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000).

But, a prisoner's right to privacy in his medical information is less than absolute. A prison policy may encroach on an inmate's constitutional right if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Here, defendants had a legitimate interest in knowing the results of plaintiff's medical tests. Indeed, pretrial detainees are guaranteed adequate medical care under the Fourteenth Amendment's Due Process Clause. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). And, defendants needed to know from the test results if plaintiff would require medical care at the Coffey County facility after his extradition there. It was also reasonable for defendants to communicate the results between various prison officials and medical personnel. Indeed, "assuring that prison inmates receive necessary medical attention entails cooperation between non-medical and medical prison personnel." *Keltner v. Bartz*, No. 13-3022-SAC, 2013 WL 761157, at *3 (D. Kan. Feb. 27, 2013). The court thus concludes that plaintiff's allegations about the testing conducted and communications about the results of that testing between prison and medical personnel fail to state an actionable Fourth Amendment violation.

Plaintiff's Petition also asserts that defendants violated his rights when they communicated the test results to plaintiff's family and friends. Defendants argue that, even if

8

defendants violated plaintiff's constitutional rights by doing so, qualified immunity bars plaintiff's claim.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The qualified immunity inquiry has two prongs: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." *Weise v. Casper*, 593 F.3d 1163, 1166–67 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 232). Courts are free to address either prong first "in light of the circumstances of the particular case at hand." *Id.* (quoting *Pearson*, 555 U.S. at 236). Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Id.* Because it is unclear whether defendants' alleged conduct here violated plaintiff's constitutional rights, the court first addresses whether plaintiff's rights were clearly established at the time of the violation.

A plaintiff's right is clearly established if "there [is] a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). "A plaintiff cannot simply

identify a clearly established right in the abstract and allege that the defendant has violated it." *Herring*, 218 F.3d at 1176.

Here, plaintiff cites no Supreme Court or Tenth Circuit case supporting the proposition that plaintiff possessed a right to privacy in medical test results that forbade disclosing those results to friends and family and that this right was a clearly established *constitutional* right. The court has not found any case supporting this right either.

The court recognizes that the Tenth Circuit has held that a probationer adequately alleged a violation of a constitutional right to privacy when his federal probation officer disclosed his HIV status to his sister and his employer. *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000). But, the court has found no case holding that a prisoner in custody can allege a constitutional violation based on the disclosure of a cancer diagnosis to the prisoner's family and friends, as plaintiff alleges here. Indeed, other circuit courts have held that prisoners have no constitutional right to absolute medical confidentiality. *See*, *e.g.*, *Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004) ("Prisoners, though, at best have very limited privacy rights, and we have not previously held in a published opinion that they enjoy a constitutional right to privacy in their medical information." (citations omitted)); *Franklin v. Dist. of Columbia*, 163 F.3d 625, 637–38 (D.C. Cir. 1998) (holding that no right to privacy in medical records exists for Spanish-speaking prisoners who had to communicate their medical information through interpreters because the court "cannot see how a prisoner's right to medical confidentiality can be derived from the Constitution"); *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995) (noting that the court was unable to find "any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records").

The court also recognizes that two circuit courts have found that prisoners alleged a constitutional violation based on the disclosure of medical information but, in both cases, the defendants purposefully disseminated information about the prisoner's HIV-positive status that was unrelated to legitimate penological interests and thereby exposed the prisoners to potential discrimination, hostility, or violence. *See Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001); *see also Powell v. Schriver*, 175 F.3d 107, 112–13 (2d Cir. 1999). Plaintiff's allegations here are not at all similar to those in *Delie* or *Schriver*. Thus, the court cannot conclude that the constitutional violation that plaintiff alleges was clearly established at the time when the purported violation allegedly occurred.

Because plaintiff cannot merely allege a violation of an abstract right, he "has failed to carry [his] burden under the threshold inquiry for qualified immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1103 (10th Cir. 2005). For these reasons, qualified immunity applies. The court thus dismisses plaintiff's constitutional claim.

### 2. Violation of Federal and State HIPAA Laws (Count II)

Defendants next ask the court to dismiss Count II because HIPPA provides no private right of action. Congress enacted HIPAA to establish "national standards for protection of the privacy of individually identifiable health and medical information." *Howard v. Douglas Cty. Jail*, No. 09-3085-SAC, 2009 WL 1504733, at *3 (D. Kan. May 28, 2009) (citation and internal quotation marks omitted). HIPAA allows for both civil and criminal penalties for unlawful disclosures of medical information. *Keltner*, 2013 WL 761157, at *4. However, the Secretary of the Department of Health and Human Services enforces and investigates HIPAA violations, not private individuals. *See Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004). Courts thus have concluded that HIPPA does not support a private right of action. *See*

*Wilkerson v. Shinseki*, 606 F.3d 1256, 1269 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information."); *see also Keltner*, 2013 WL 761157, at *4 ("[A]ll courts to consider the matter have held that HIPAA does not create a private right of action."). Because plaintiff does not have a private right of action, the court dismisses plaintiff's claim under the federal HIPAA law.

Plaintiff also asserts a claim under state HIPAA laws. Plaintiff never identifies the specific state statute that he asserts defendants violated. Construing plaintiff's Petition liberally, the court could consider plaintiff's state law claim as one under the Kansas Health Information Technology Act ("KHITA"), Kansas's statutory equivalent to HIPAA. Kan. Stat. Ann. §§ 65-6821–65-6835. But, for the reasons explained below, the court exercises its discretion to decline supplemental jurisdiction over plaintiff's state law claims. So, even if the court construed plaintiff's Petition as alleging a violation of KHITA and even if that act provides a private right of action, the court does not address that claim because it declines to exercise supplemental jurisdiction.

### 3. Violation of Privacy Acts and Tort Laws (Count III)

Plaintiff alleges that defendants violated "[f]ederal and [s]tate [p]rivacy acts" and "[t]orts [l]aws[,]" and that defendants unlawfully invaded his privacy. Doc. 1-1 at 4. Plaintiff does not identify the federal privacy act or any federal tort laws that defendants purportedly violated. Nevertheless, the court concludes that qualified immunity bars any such claim. A government official may lose his or her qualified immunity by "violat[ing] clearly established statutory . . . rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984) ("officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise

to the cause of action for damages"). Because plaintiff has failed to allege a violation of a clearly established statutory right, plaintiff's federal privacy act and federal tort claims are barred by qualified immunity.

### 4. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims.

Although filed in state court, plaintiff's Petition invokes jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.[2] Defendants removed the lawsuit invoking the court's federal question jurisdiction. Doc. 1 at 3, ¶ 9 (citing 28 U.S.C. § 1331 that confers federal courts with "original jurisdiction over all civil actions arising out of the Constitution, laws, or treatises of the United States"). But, as explained above, the court has dismissed all of the federal claims that plaintiff asserts and over which the court had original jurisdiction. Under 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). So, now, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claims.

The decision whether to exercise supplemental jurisdiction is one committed to a district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental]

---

[2] Plaintiff's Petition never alleges that diversity jurisdiction exists. It also alleges no facts about the parties' citizenship that might establish diversity jurisdiction.

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (holding that where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)). Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the court has dismissed every claim against defendants which it had original jurisdiction to decide. The case is in its early stages. Discovery has not yet commenced and no significant pretrial proceedings have occurred. The court thus concludes that considerations of judicial economy, convenience, fairness, and comity weigh against the court's exercise of supplemental jurisdiction over plaintiff's state law claims. The court thus exercises its discretion and declines to exercise supplemental jurisdiction over plaintiff's state law claims.

### III. Conclusion

For reasons discussed above, the court grants in part defendants' Motion for Judgment on the Pleadings. Doc. 21. Even under the liberal construction standard afforded a pro se litigant's pleadings, plaintiff's Petition fails to state plausible claims for relief under federal law. The court thus dismisses those claims with prejudice. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and thus remands those claims to the District Court of Coffey County, Kansas.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgement on the Pleadings (Doc. 21) is granted in part and denied in part. The court dismisses

plaintiff's federal claims under Fed. R. Civ. P. 12(c) because they fail to state a plausible claim for relief. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and thus remands the case to the District Court of Coffey County, Kansas

**IT IS FURTHER ORDERED THAT** defendants' Motion to Strike Plaintiff's Response (Doc. 25) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's "Motion for Judicial Pardon for Late Filing" (Doc. 26), which the court has construed as a motion for leave to file plaintiff's response out of time, is granted.

**IT IS SO ORDERED.**

**Dated this 15th day of September, 2017, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**